IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRODERICK PATTERSON,
    Plaintiff,

v.      CIVIL ACTION NO. DKC-12-2793

GLADHILL, et al.,
    Defendants.

\*\*\*

# MEMORANDUM OPINION

Pending is the motion of Corizon, Inc.[1] and Ginny Hendershot (the "Medical Defendants") to Dismiss, or in the Alternative Motion for Summary Judgment. ECF No. 26. Plaintiff has responded (ECF No. 35) and Medical Defendants have replied. ECF No. 37. Upon review of papers and exhibits filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, the dispositive motion filed by the Medical Defendants will be granted.

## Background

Plaintiff states that while incarcerated at the Maryland Correctional Institution-Hagerstown, on September 24, 2011, his finger was amputated when it was caught in a steel grill.[2] He was taken to a local hospital emergency room where Dr. Herrera reattached the finger and prescribed pain medication and daily dressing changes. Plaintiff claims that from May 27-June 6 and June 8-10, 2012, he was denied daily dressing changes by Corizon employees. Plaintiff further alleges that on those same dates, Nurse Ginny Hendershot was responsible for making sure the recommendations of the plastic surgeon for daily dressing changes were

---

[1] The Clerk shall amend the docket to reflect the correct spelling of Defendant Corizon, Inc.'s name.

[2] Plaintiff's complaint against correctional employees for the injury to his finger and alleged interference and denial of prescribed medical care was previously dismissed without prejudice. ECF No. 43. Plaintiff's Motion for Voluntary Dismissal (ECF No. 34) shall be denied as to the Medical Defendants, Plaintiff having indicated his desire to proceed with these claims. ECF No. 44.

followed. Plaintiff alleges Hendershot breached her responsibility to Plaintiff by denying him the prescribed medical treatment. Plaintiff states that Hendershot's breach of duty caused excessive and unnecessary pain and suffering as a result of the dirty wound. He states that he met with Dr. Thompson on June 11, 2012, and Nurse Heather changed the dressing on that date. ECF No. 1.

Plaintiff also states that on June 11, 2012, he met with correctional employees concerning the many complaints he had filed detailing the interference of correctional employees with his prescribed medical treatment. Plaintiff states that at that time Captain Manuel produced a letter signed by Ginny Hendershot which indicated the order for daily dressing changes had been discontinued. Plaintiff states that he filed a grievance against Hendershot and she quit or was terminated shortly thereafter. *Id*.

The medical records demonstrate the Plaintiff was seen repeatedly and monitored for his finger injury during 2011 and 2012. ECF No. 26, Ex. 2, p. 56-76, 86-91, 97-102. Plaintiff was evaluated by Hendershot on May 31, 2012. It was noted that the wound was healing with no signs or symptoms of infection noted.[3] *Id*., p. 78. Plaintiff's wound care monitoring log indicates that he was seen on May 27, 28, 29, 30, and 31, 2012 for wound care treatment. *Id*., p. 58, 97. Plaintiff medical records indicate he refused treatment on June 1, 2012, in order to attend religious services.[4] *Id*., p. 2, 79, 81. Plaintiff was next evaluated by Dr. Thompson on June 7,

---

[3] In his opposition to the dispositive motion, Plaintiff indicates that prior to the third surgery on his finger on May 11, 2012, his surgeon prescribed an antibiotic solution to clean the wound daily. Plaintiff states that the antibiotic solution was used and charted sporadically. *Id*., Ex. 8. He also alleges that his surgeon directed he be given Percocet for pain management but he was only provided Tylenol. *Id*., Ex. 12. Lastly, Plaintiff states that he saw psychology staff because of the psychological harm caused by not having his dressing changed. *Id.*

[4] The Warden's response to an ARP submitted by Plaintiff regarding the interruption in his wound care indicates that Plaintiff was seen for "wound care on 5/27/12, 5/28, 5/29, 5/30, and again on 5/31. You signed off on 6/1/2012 which suspended your wound care treatment until the provider could meet with you to discuss. At that appointment on 6/7/2012, you informed the provider that you had missed your wound care appointment on 6/1 because you chose to participate in a religious service. You have not resumed regular wound care treatments...." ECF No. 35, Ex. 4. Plaintiff disputes that he signed off on treatment. ECF No. 35-12, Affidavit.

2012, who found the wound clean, dry and healing. *Id*., p. 80-82. On June 11, 2012, Laura Smith, RN, noted the wound dressing was clean, dry and intact. The wound site was covered with clear mesh per the surgeon's instruction and covered with silvelon. Smith noted the wound was cleaned with hibiclens and wrapped with coban.[5] *Id*., p. 3, 83.

Plaintiff's wound was examined and the bandage changed on June 13, 14 and 17, 2012. *Id*., p. 84-86, 97. Plaintiff failed to appear for physical examination and wound care on June 18, 20, and 22, 2012. *Id*. p. 92-94. The wound was inspected on June 25 and 26, 2012. *Id*., p. 97. Plaintiff was seen on June 27, 2012, for an off-site consultation regarding the finger injury. *Id*., p. 12, 95. Plaintiff's dressing was changed on June 28 and 30, 2012. *Id*., 96-97. On June 27, 2012 and July 19, 2012, it was noted by Plaintiff's surgeon that the injury was well-healed and Plaintiff should continue the use of coban wrapping for 8 months after the date of surgery.[6] *Id*. p. 11-12, 15.

Hendershot avers that she treated Plaintiff appropriately and within the appropriate standard of care. *Id*., Ex. 1. Hendershot explains that she was not responsible for assuring that Plaintiff was presented to the medical department every day for dressing changes. Rather, correctional officers brought Plaintiff to the medical unit. She states that when Plaintiff presented to her for dressing changes she either changed the dressing or assisted Plaintiff in doing so per his request. She avers that she did not refuse or deny Plaintiff treatment. *Id*.

---

[5] Coban is a self-adhering bandage that coheres to itself, but does not adhere well to other surfaces. http://www.shop3m.com/3m-coban-self-adherent-wrap-rmtkdjpqgb.html

[6] Correctional officers reported to medical staff on July 21, 2012, that Plaintiff was observed throwing away coban wrap. ECF No. 26, Ex. 2, p. 104. Plaintiff disputes doing so. On September 14, 2012, he was reissued coban wrap. *Id*., p. 105.

Plaintiff states that after he filed complaints to the medical grievance coordinator his wound care appointment was changed from the evening shift to the morning shift so that he would not have to be seen by Hendershot. ECF No. 35.

**Standard of Review**

A. Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B. Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an

> otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a

sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## Discussion

A.  Respondeat Superior

Plaintiff's complaint against Corizon, Inc. is based solely upon the doctrine of *respondeat superior,* which does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). Plaintiff has pointed to no action or inaction on the part of

Corizon, Inc. that resulted in a constitutional injury, and accordingly, his claims against Corizon, Inc. shall be dismissed.

B.  Medical Care

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a Plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because

7

prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) quoting *Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Plaintiff's allegations that he was not provided constitutionally adequate medical treatment for wound care is belied by the record. Plaintiff was evaluated in a timely manner and provided frequent and regular medical care for the wound to his finger. ECF No. 26, Ex. 2. Nurse Hendershot was not responsible for insuring that Plaintiff appear in the medical department for dressing changes. *Id.*, Ex. 1. Plaintiff's own complaint alleges that various members of the correctional staff, not members of the medical staff, interfered with his ability to go to the medical department for dressing changes. ECF No. 1. Even if Plaintiff did not receive daily dressing changes on some days over a two week period of time as recommended by his surgeon, he has failed to demonstrate any injury as a result of the disruption in his medical care. Medical records demonstrate that his wound continued to heal and did not become infected. ECF No. 26, Ex. 2. While the initial injury to his finger and the resulting surgeries certainly involved serious medical needs, there is no indication that an occasional missed dressing change, by itself, involved such a serious need. Moreover, there is a total lack of evidence that Nurse Hendershot was aware of a serious need prompted by the daily dressing change and that she ignored it. Furthermore, Plaintiff's claim that his previously diagnosed anxiety disorder increased while he worried over

his wound care is unavailing. Title 42 U.S.C. § 1997e(e) provides that: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

C. Injunctive Relief

Plaintiff's request for injunctive relief shall be denied as he has failed to demonstrate: (1) by a "clear showing" that he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20-23 (2008); *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 292-93 (4th Cir. 2011). In short, the conditions set out by Plaintiff do not warrant injunctive relief.[7]

**Conclusion**

In light of the foregoing, the Medical Defendants are entitled to summary judgment. A separate Order follows.


Date: <u>August 27, 2013</u>　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　　DEBORAH K. CHASANOW
　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[7] Plaintiff seems to indicate that this request for injunctive relief has been mooted as he states that once Defendants received notice of his claim he "was transported soon thereafter to his, previously scheduled surgeon visit..." ECF No. 35.